# Wilson *v.* State.

No. 41261 October 5, 1959 114 So. 2d 677

*Ethridge, Minniece & Bourdeaux,* Meridian, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

On the night of Monday, January 19, 1959, Reverend Ed Grayson was the owner of a number of hogs. Wilson, the appellant, was charged by indictment with stealing one of these hogs on that night. Wilson was convicted and sentenced to the state penitentiary for one year. He appealed to this Court. On this appeal he makes four contentions. After careful examination of the record and of the briefs, we have concluded that it is necessary that we discuss only one of the contentions. That contention is that the proof is insufficient to connect Wilson with the crime and it is too uncertain and vague to identify the stolen property. This requires a brief summary of the testimony.

Wilson was an employee of J. W. Snowden. Snowden operated a gasoline service station in Meridian, Mississippi. Wilson did not work on Monday. Snowden testified that Wilson appeared at his filling station in the afternoon of said date. Wilson asked Snowden if he would be interested in buying a hog. Wilson said he could buy, or acquire title to, the hog. He estimated the weight of the hog and made a price to Snowden of $10 or $12. Snowden suggested that the hog was worth more than that and it would bring a better price at an auction sale. Snowden asked Wilson why the hog was selling for such a small price and Wilson replied he did not know but that "some people just don't seem to wake up." Snowden then said he did not care to buy

the hog. The foregoing is in substance the testimony of Snowden. The foregoing conversation seems to have been heard by some two or three others persons.

L. C. Naylor testified that he was on duty working for Snowden. Wilson said he was going to acquire a hog and he wanted Naylor, who got off of work at 8 o'clock in the evening, to come by his home and help him clean and dress a hog. Naylor said he would do that but as a matter of fact he did not do it. Naylor, on cross-examination, testified that Wilson said he was going to clean a hog but did not say where he was going to get it. The other two persons present on the foregoing occasion did not testify.

The State then introduced B. L. Warren. He testified that the Grayson residence was a short distance south of the corporate limits of Meridian; at about 7 o'clock on the night of January 19, 1959 that he, in his automobile, was driving by the Grayson home in the direction of Meridian. He said the Grayson hog pen was across the road from the residence; that he drove up behind an automobile which was parked at the hog pen. There were three men in the automobile but he was unable to identify them in the darkness. He said the lights from his car shone on the back of the other car. The trunk of the other car lacked some seven or eight inches being entirely closed. There was blood on the back of the car. There was a dead hog in the trunk of that car. Warren said: "It was in the back of the car with the tail hanging out." When Warren appeared, the other car immediately pulled away going toward Meridian. The other car appeared to be trying to lose Warren. It was being driven in such a manner that Warren was suspicious there was something wrong. He took down the number of that car. Finally, after Warren had chased the other car some distance, the other car succeeded in losing Warren. Warren called Grayson and told him what had happened and that he believed one of

Grayson's hogs had been stolen and he gave Grayson the tag number taken from the other car.

Harry Hughes was the deputy sheriff. He testified that someone called him over the phone and gave him the tag number of the fleeing automobile. He investigated the tag number at the court house, which led him to Wilson's home. He carried Grayson with him. They found a hog "strung up in Wilson's backyard." Wilson told Hughes he had bought the hog. Hughes testified that Wilson said "two friends of mine told me they would get me a hog, and they went and got me the hog and I paid them $15 for it." Hughes examined the automobile which was at Wilson's home. It had considerable blood on the back of the car and Wilson told Hughes he had loaned the car to a boy who brought the hog to him and from whom he bought the hog. He said he had loaned this man his car to get the hog. He said he knew him well; that his first name was Walter; he had known him a long time but he was not able to give a surname. Wilson, at the request of Hughes, got into Hughes' automobile and undertook to find Walter. Hughes and Wilson went to a number of places but no information as to the identity of Walter, or where he might be, could be obtained. Hughes testified that practically all the hair had been scraped from the hog and he, Hughes, paid a boy $2 to cut into and take the insides from the hog, and the hog was carried to what is called Betbeze's Place in Meridian. Hughes arrested Wilson.

The Reverend Ed Grayson testified that he went with Hughes to Wilson's house. The hog was hanging up in Wilson's backyard. Most of the hair had been scraped from the hog. However, Grayson was positive in his identification of the hog. He said it was the hog that had been stolen from his pen. He identified it by color, size and the hair about the hog's feet, which hair had not been removed. Grayson said: "It was my hog. I identified it because I knew I had lost a white hog and I knew

him around the hoofs. He had had some hair around and on its feet." He repeated he had no doubt that it was his hog. He said he intended to sell the hog the next day at auction sale and had checked on the hogs to ascertain which ones were ready for the market, and "this hog, I had paid special attention to, a special type." He said he had had extensive experience in raising, buying and selling hogs.

Wilson testified that he bought the hog from a friend named Walter for $15. He knew Walter well but he could not give his last name. He said he had known him for some time. Wilson testified that he operated a night spot called Jones Drive-In, where he sold whiskey and that Walter helped him in the whiskey business. Wilson was asked: "What connection did you know this Walter" and he answered: "Well, through bootlegging." He said he contacted Walter after he, Wilson, had a conversation with Snowden and Naylor. He talked to Walter about 6 o'clock that evening. Walter did not have the hog but he wanted Wilson to pay him $15. Wilson would not pay until Walter produced the hog. He testified Walter said he was going to get the hog from his father. Wilson then said that Walter "goes and gets the hog" using Wilson's automobile. He was gone about 45 minutes and brought the hog back in the trunk of the car. The hog was dead. Wilson complained about that. "I wanted to kill him myself — he could have been dead a long time." However, he paid Walter the $15 and carried the hog to his house. He hung the hog in the back yard and scraped most of the hair off him. He admitted that after Hughes, the deputy sheriff, saw him that he and Hughes tried to find Walter. They could find no trace of such a person. He said, "Well, all I know is Walter, that is all I know him." He was asked if he had talked to Walter before he had talked to Snowden and replied, "I did not know whether he was going to get him or not" having reference to getting the hog.

He repeated that Walter had used the defendant's automobile to go and get the hog and that he and Hughes searched high and low trying to find some person by the name of Walter, which they were not able to do.

The foregoing is the substance of the testimony bearing upon the identity of the stolen property and the connection of Wilson with the larceny, except that Wilson admitted that he had been convicted of one or more crimes, the exact number not being certain from the testimony.

 We are of the opinion that the identity and ownership of the hog found in Wilson's back yard were questions properly submitted to the jury and that the jury was justified in finding that the hog was the property of Grayson. It is undisputed that Grayson's hog was stolen early on the night of January 19. It is also undisputed that Warren came upon parties as they loaded a hog into an automobile from Grayson's hog pen and that the automobile was maneuvered in a very suspicious manner. It is undisputed also that Grayson, in positive terms, identified the hog as being his property and he gave his reasons for so concluding. He was guided by the weight and color of the hog and the hair remaining thereon and shortly before this he had examined the hog to determine its suitability for sale at public auction. We think the testimony justified the verdict. This being true, the presumption arose that Wilson stole the hog since he had it in his possession. McDougal v. State, 199 Miss. 39, 23 So. 2d 920.

 We are of the opinion also that the truthfulness of Wilson's explanation as to where he obtained the hog and how he came into its possession were questions for decision by the jury. Coggins v. State, 234 Miss. 369, 106 So. 2d 388. The fact that Wilson offered to sell the hog to Snowden before he, Wilson, had made any arrangements to buy from Walter; the fact that no such person or character known as Walter was ever

found, plus the fact Wilson did not know the surname of Walter, together with other contradictions which appear in the testimony of Wilson, justified the conclusion of the jury that Wilson's account of how he came into possession of the hog was simply a concoction and not a fact. As was said in Coggins v. State, supra, "appellant's explanation was neither reasonable nor credible."

Affirmed.

*Hall, Holmes, Ethridge,* and *Gillespie, JJ.,* concur.