# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01321-COA

KENNETH R. GOLDSMITH A/K/A KENNETH                APPELLANT
GOLDSMITH A/K/A KENNETH RAY
GOLDSMITH

v.

STATE OF MISSISSIPPI                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2014 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF GRAND LARCENY, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE WITHOUT ELIGIBILITY FOR PAROLE |
| DISPOSITION: | AFFIRMED - 01/05/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.    Kenneth R. Goldsmith was convicted of grand larceny in Rankin County Circuit Court. He was sentenced as a habitual offender to serve life without parole. Goldsmith raises the following issues on appeal: (1) the evidence was insufficient to support the verdict, and (2) his sentence as a habitual offender of life without parole is disproportionate to the

crime and constitutes cruel and unusual punishment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On October 15, 2012, David Purvis, vice president of safety at Ergon Trucking in Flowood, Mississippi, noticed suspicious activity in the Ergon parking lot involving a man in a Chevrolet Trailblazer.[1] Purvis reported the suspicious activity and the Trailblazer's license-plate number to the Flowood Police Department.

¶3. On October 19, 2012, at 8:15 a.m., Barton Lampton parked his truck in the parking lot at Ergon, where he worked. Lampton's Giant TCR Advanced SL1 bicycle was in the back of the truck. According to Lampton, the bicycle retailed for $6,000 to $6,500. But because Lampton was friends with the owner of a bicycle shop, he was able to purchase a demo for $3,200.

¶4. Time-stamped photographs taken from the surveillance camera at Ergon show that at 8:37 a.m., the same Trailblazer from October 19 drove through Ergon's smaller parking lot. At 8:40 a.m., the Trailblazer drove into Ergon's larger parking lot where Lampton's truck was parked. The network administrator at Ergon was unable to zoom in to the photographs to see who was in the vehicle.

¶5. Ian Gallman, an employee at USA Pawn and Jewelry on Woodrow Wilson Avenue in Jackson, Mississippi, identified the pawn receipt where Goldsmith pawned Lampton's

---

[1] The Trailblazer belonged to Goldsmith's fiancée, Lillian Harvey. The following people had access to the Trailblazer: Harvey; her son, Christopher; her cousin, Smootie; and Goldsmith.

2

bicycle.[2] Gallman estimated Goldsmith would have arrived at the pawn shop between 9:00 a.m. and 9:10 a.m. The transaction was complete at 9:20 a.m. According to Gallman, the retail value of the bicycle is $7,000. However, Gallman paid Goldsmith $100 because that is the amount Goldsmith requested. Gallman later listed the bicycle on Craigslist for $4,000.

¶6.     At trial, Goldsmith denied stealing the bicycle and denied having been in the Ergon parking lot on October 15 or 19. Goldsmith testified he was driving the Trailblazer on the morning of October 19 when his stepson, Christopher, and his stepson's friend asked him to pick them up at the Citgo gas station on Lakeland Drive. Goldsmith could not recall the friend's name.

¶7.     On direct examination, Goldsmith testified that he paid the friend $45 for the bicycle. The friend then told Goldsmith to wait fifteen to twenty minutes. If he did not bring Goldsmith his money back, the friend stated Goldsmith could sell the bicycle. Goldsmith then drove from the Citgo to the pawn shop and pawned the bicycle for $100 to pay an electrical bill.

¶8.     On cross-examination, Goldsmith's testimony initially conformed to his testimony on direct. But later on cross-examination, Goldsmith testified that after picking up his stepson and his stepson's friend from the Citgo, he drove the Trailblazer from the Citgo to the Parkside Inn on Interstate 55 North in Jackson, where Goldsmith took fifteen to twenty minutes to service an air conditioner. Goldsmith then drove the Trailblazer from the Parkside Inn to the pawn shop.

---

[2] During the transaction, Goldsmith was required to show photo identification.

3

¶9. During a hearing on Goldsmith's prior convictions, it was established that he had a total of at least eleven prior felony convictions: five uttering forgery; three theft by receiving; two commercial burglary; and one possession of a firearm by an incarcerated person. Goldsmith also had a total of at least two prior convictions that qualify as crimes of violence: one robbery conviction and one aggravated-assault conviction.

¶10. At the conclusion of the State's case, Goldsmith moved for a directed verdict, which was denied. Goldsmith did not renew his motion at the close of all evidence. On December 13, 2014, Goldsmith was convicted of grand larceny, and on February 26, 2014, he was sentenced as a violent habitual offender to life in prison. On June 30, 2014, Goldsmith filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion, and Goldsmith now appeals.

## DISCUSSION

### I. Insufficient Evidence

¶11. In his first issue, Goldsmith claims the evidence was insufficient to support his conviction for grand larceny. Specifically, Goldsmith claims the trial court erred in denying his motions for a directed verdict and JNOV or, in the alternative, a new trial.

### A. Procedural Bar—Directed Verdict

¶12. "To preserve the issue of denial of a directed verdict, the defense must move for [a] directed verdict at the close of the State's [case]." *Page v. State*, 990 So. 2d 760, 761 (¶9) (Miss. 2008) (citing *Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989)). "If a motion for a directed verdict is denied and the defendant introduces evidence on his own behalf, the

4

defendant must renew his motion for [a] directed verdict at the close of all evidence." *Id.*

¶13.    Goldsmith moved for a directed verdict at the close of the State's case-in-chief. This motion was denied. Goldsmith then presented evidence on his own behalf. At the conclusion of all evidence, Goldsmith did not renew his motion for a directed verdict. Therefore, Goldsmith is barred from raising the issue on appeal.

### B.    Procedural Bar Notwithstanding

¶14.    Procedural bar notwithstanding, we find that the trial court did not err in denying Goldsmith's motion for a directed verdict or his motion for a JNOV or new trial.

¶15.    "A directed verdict and a motion for JNOV both challenge the sufficiency of the evidence presented to the jury." *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). "Therefore, our standard of review is the same for both." *Id.* "This Court will consider the evidence in the light most favorable to the State, giving the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'" *Id.* (quoting *Collier v. State*, 711 So. 2d 458, 461 (¶11) (Miss. 1998)). "The relevant question then becomes whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

¶16.    "Unlike a motion for a directed verdict or JNOV, a motion for a new trial challenges the weight of the evidence." *Id.* at (¶12) (citing *Sheffield v. State*, 749 So. 2d 123, 127 (¶16) (Miss. 1999)). "This Court's standard of review of a trial court's denial of a motion for a new trial is abuse of discretion." *Id.* (citing *Johnson v. State*, 904 So. 2d 162, 167 (¶11)

5

(Miss. 2005)). "A new trial will not be awarded unless 'the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" *Id.*

¶17.    In his motion for a JNOV or new trial, Goldsmith challenged the sufficiency of the evidence, among other things.  In his motion for a directed verdict, Goldsmith claimed there was insufficient evidence to establish the value of the bicycle met the monetary requirement for grand larceny.  In his appeal, Goldsmith claims there was insufficient evidence to establish he committed the crime.[3]  We will address each argument in turn.

### 1.    Value of the Bicycle

¶18.    Goldsmith claims there was insufficient evidence to establish the value of the bicycle met the monetary requirement for grand larceny.

¶19.    Grand larceny is defined as "taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more . . . ."  Miss. Code Ann. § 97-17-41(1) (Rev. 2006).

¶20.    "In *Smith v. State*, 881 So. 2d 908 (Miss. Ct. App. 2004), [the] defendant was convicted after the victim's father testified that he paid between $3,000 and $4,000 for truck rims that were later stolen."  *Williams v. State*, 994 So. 2d 821, 826 (¶14) (Miss. Ct. App.

---

[3] "Motions for a directed verdict must be specific and not general in nature." *Sheffield*, 749 So. 2d at 126 (¶10) (quoting *Banks v. State*, 394 So. 2d 875, 877 (Miss. 1981)). Goldsmith did not specifically challenge the sufficiency of the evidence with respect to whether he committed the crime in his motion for a directed verdict.  Nor did Goldsmith specifically challenge the sufficiency of the evidence with respect to whether he committed the crime in his motion for a JNOV or new trial.  However, we will continue to address the issue.

6

2008). The defendant appealed and claimed his conviction should be reversed based on insufficient proof of the value of the rims. *Id.* This Court stated:

> [T]he victim's father testified that he paid between [$3,000 and $4,000] for the rims. Although this was not direct testimony of the value of the rims, we find that it circumstantially provided a basis from which the jury could infer that the rims were worth at least $250 because of the amount of the purchase price. While this is not the strongest evidence that could have . . . and should have been presented, we cannot say that no fair-minded juror could find [the defendant] guilty on this evidence or that allowing the verdict to stand will amount to an unconscionable injustice.

*Id.* (citing *Smith*, 881 So. 2d at 910-11 (¶11)).

¶21. Lampton testified that the bicycle retails for $6,000 to $6,500. He also testified that he paid $3,200 for the bicycle. Furthermore, Gallman testified that the bicycle retails for $7,000. Gallman also testified that he listed the bicycle on Craigslist for $4,000. Therefore, this issue is without merit.

## 2. Sufficiency of the Evidence

¶22. Goldsmith claims there was insufficient evidence to establish he committed the crime. Specifically, Goldsmith claims the State failed to establish he was the person driving the Trailblazer, or that the person driving the Trailblazer was the person who stole the bicycle.

¶23. "That the only evidence supporting [the] conviction is circumstantial does not mean the evidence is insufficient." *Walton v. State*, 642 So. 2d 930, 932 (Miss. 1994). "[The Mississippi Supreme Court has] consistently held that the State may prove a crime solely by circumstantial evidence." *Id.* "[T]he test to be applied is whether 'a rational fact[-]finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged.'" *Presley v. State*, 994 So. 2d 191, 194 (¶10)

7

(Miss. 2008) (quoting *Shields v. State*, 702 So. 2d 380, 382 (Miss. 1997)). "However, we must view the evidence in a light most favorable to the verdict." *Id.* (citing *Jones v. State*, 819 So. 2d 558, 561 (¶11) (Miss Ct. App. 2002)).

¶24. "Under Mississippi law, possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt." *Seales v. State*, 90 So. 3d 37, 42 (¶25) (Miss. 2012) (quoting *Rushing v. State*, 461 So. 2d 710, 712 (Miss. 1984)). "[T]he explanation, however, must both be reasonable and credible." *Presley*, 994 So. 2d at 195 (¶20) (quoting *Pearson v. State*, 248 Miss. 235, 158 So. 2d 710, 714 (1963)). "If the explanation is not reasonable and credible, the evidence is sufficient for larceny." *Id.* (citing *Wilson v. State*, 237 Miss. 294, 301, 114 So. 2d 677, 680 (1959)).

¶25. The evidence showed that Goldsmith was in possession of the bicycle the same morning it was stolen. However, Goldsmith's explanation as to how he gained possession is demonstrably false.

¶26. Between 8:40 a.m. and (at the latest) 9:10 a.m., Goldsmith claims he drove the Trailblazer to the Citgo on Lakeland Drive, where he paid $45 for the bicycle; may or may not have waited fifteen to twenty minutes; drove the Trailblazer to the Parkside Inn on Interstate 55 North; serviced an air conditioner for fifteen to twenty minutes; and then drove the Trailblazer to the pawn shop on Woodrow Wilson.

¶27. Lampton parked his truck, with the bicycle in the back, at Ergon at 8:15 a.m. Time-stamped photographs place the Trailblazer in the parking lot at Ergon at 8:40 a.m. It was

8

estimated that Goldsmith arrived in the Trailblazer at the pawn shop between 9:00 a.m. and 9:10 a.m. According to the pawn receipt, the transaction was completed at 9:20 a.m.

¶28. From these facts, there was sufficient evidence for the jury to find Goldsmith guilty of grand larceny.

## II. Disproportionate Sentence

¶29. In his second issue, Goldsmith claims his sentence of life without parole as a habitual offender is disproportionate to the crime and constitutes cruel and unusual punishment.

¶30. "[T]he general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Wall v. State,* 718 So. 2d 1107, 1114 (¶29) (Miss. 1998) (quoting *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996)).

¶31. "[T]his Court will [conduct a] three-pronged [disproportionality] analysis as set forth by the United States Supreme Court in *Solem v. Helm*, [463 U.S. 277 (1983),] but only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Id.* (citing *Hoops*, 681 So. 2d at 538). "The appellate courts will not apply the three-prong disproportionality test when there is a lack of this initial showing." *Nichols v. State*, 826 So. 2d 1288, 1290 (¶12) (Miss. 2002).

¶32. The Mississippi Supreme Court's application of *Rummel v. Estelle*, 445 U.S. 263 (1980), in *Wall* serves as a guide in the determination of the threshold comparison. The defendant in *Wall* was convicted of possession of a controlled substance. *Wall,* 718 So. 2d at 1109 (¶2). Wall was previously convicted of robbery and armed robbery. *Id.* at (¶1). Because armed robbery is a crime of violence per se, Wall was classified as a habitual

9

offender according to Mississippi Code Annotated section 99-19-83 (Rev. 2015) and was sentenced to life imprisonment without parole. *Id.* at 1114 (¶30). The Mississippi Supreme Court found "as long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and [the appellate] court will not reverse it." *Id.* Ultimately, the Mississippi Supreme Court held, in light of *Rummel*, that Wall's sentence was not grossly disproportionate to his crimes and a proportionality review under *Solem* was not warranted. *Id.*

¶33. In its sentencing order, the trial court found that Goldsmith was convicted of forgery in 2010; aggravated assault in 1997; and most recently, grand larceny on December 13, 2014. Aggravated assault is a crime of violence within the meaning of the habitual-offender statute. *Davis v. State*, 680 So. 2d 848, 851 (Miss. 1996). Goldsmith's sentence conforms to the requirements of the habitual-offender statute; therefore, this issue is without merit.

## CONCLUSION

¶34. The trial court did not err in denying Goldsmith's motion for a directed verdict, as his motion was procedurally barred. Procedural bar notwithstanding, we find Goldsmith's claim that the trial court erred in denying his motions for a directed verdict and a JNOV or new trial because the evidence was insufficient to support his conviction for grand larceny to be without merit. We also find Goldsmith's claim that his sentence is disproportionate to the crime and constitutes cruel and unusual punishment to be without merit. For these reasons, we affirm.

¶35. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL**

**OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**