LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Johnny Lee Floyd was convicted of possession of a controlled substance with intent to distribute. Floyd was sentenced as a habitual offender to serve sixty years in the custody of the Mississippi Department of Corrections, with no eligibility for parole or probation. Floyd was also ordered to pay a fine of $2,000,000.
¶2. Floyd now appeals, asserting the following issues: (1) the trial court erred in refusing jury instruction D-5, (2) the trial court erred in allowing evidence of his *886 prior convictions, (3) the evidence was insufficient, (4) the State failed to establish he was a habitual offender, and (5) the trial court erred in allowing evidence concerning the results of a field test for cocaine.
FACTS
¶ 3. On October 20, 2010, the Gulfport Police Department received an anonymous call claiming Floyd was storing and selling cocaine from an apartment located at 3503 Hancock Avenue in Gulfport, Mississippi, and that Floyd was driving a white GMC Envoy. Officer Tim Adams helped conduct surveillance on the apartment and saw Floyd exit a white GMC Envoy, go into the apartment, leave the apartment after several minutes, and drive away. Officer Adams testified Floyd’s hands were empty. Officer Chuck Koewers followed Floyd. Upon learning Floyd’s license had been suspended, Officer Koewers conducted a traffic stop. Officer Koewers testified Floyd did not stop immediately and was moving around in the car. After approaching the car, Officer Koewers noticed white powder on the seats and on Floyd’s mouth. Officer Koewers said it appeared Floyd was attempting to swallow something.
¶ 4. Officer Wendell Johnson assisted Officer Koewers with the traffic stop. Officer Johnson also noticed Floyd moving around in the car prior to stopping. Officer Johnson saw the white powder in the car and around Floyd’s mouth. Additionally, Officer Johnson observed a clear plastic bag containing white residue. Floyd had $558 in his pocket. ■ After arresting Floyd, Officer Johnson procured a search warrant for the apartment Floyd had previously entered. Upon entering the apartment, Officer Johnson spoke with Keisha Floyd, Floyd’s sister. Keisha told Officer Johnson it was her apartment and that she shared it with her four children and Floyd. Keisha said Floyd had been staying with her for several months.
¶ 5. The officers searched the bedroom where Floyd had resided and found the following: a picture of Floyd on the dresser, digital scales in the closet, a bag of cocaine powder and a bag of crack cocaine in the closet, a receipt bearing Floyd’s name, various municipal court documents bearing Floyd’s name, Floyd’s Social Security card, cocaine residue in the dresser drawer and under the bed, and a gun under the bed. The forensic scientist from the Mississippi Crime Lab testified that one of the bags of cocaine weighed 6.8 grams and the other weighed 26.7 grams.
¶ 6. Keisha testified that Floyd had lived with her at one time but moved out of her apartment in August 2010. Keisha stated Jerome Boose, her cousin, then moved into Floyd’s old bedroom. Keisha never gave Floyd or Boose a key to the apartment. Keisha also denied speaking with Officer Johnson- at the scene and in-' forming him that Floyd was currently living with her. On cross-examination, Keisha admitted she never told the authorities Boose was living with her.
¶ 7. Boose testified he moved into Keisha’s apartment in June 2010 and was living there at the time the police searched the apartment. Boose claimed ownership of the drugs, the gun, and the digital scales found in the search. On cross-examination, the State introduced a taped conversation between Boose and Floyd, discussing Boose’s decision to testify at Floyd’s trial. The State had only learned of Boose’s involvement a few days prior to trial, and Officer Adams went to interview Boose at the correctional center where he was incarcerated at the time. This conversation between Boose and Floyd occurred after Officer Adams visited Boose to discuss Boose’s involvement in Floyd’s case. *887 In the tape, Boose and Floyd discuss Floyd’s three prior felony convictions and Boose’s decision to claim ownership of the drugs. At one point Floyd mentioned he would retain an attorney to represent Boose.
DISCUSSION
I. JURY INSTRUCTION D-5
¶ 8. Floyd contends the trial court committed reversible error by refusing jury instruction D-5. We first note that the State asserts this issue is procedurally barred because Floyd failed to object to the trial court’s decision to refuse D-5. However, the Mississippi Supreme Court has stated that “there is a long line of cases which affirm the tenet that the refusal of instructions offered by the defendant need not be objected to in order to preserve the issue for appeal.” Green v. State, 884 So.2d 733, 736 (¶ 10) (Miss.2004).
¶ 9. “In determining whether error lies in the [giving] or refusal of various [jury] instructions, the instructions actually given must be read as a whole.” Ford v. State, 52 So.3d 1245, 1247 (¶ 10) (Miss.Ct.App.2011) (quoting Wess v. State, 926 So.2d 930, 934 (¶ 20) (Miss.Ct.App.2005)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. “[T]he court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.” Id. (quoting Hager v. State, 996 So.2d 94, 97 (¶ 9) (Miss.Ct.App.2008)).
¶ 10. Instruction D-5 stated the following:
There must be sufficient facts [to] warrant ] a finding that Johnny Lee Floyd was aware of the presence and character of cocaine at 3503 Hancock Avenue Apartment # 1 in Gulfport, Mississippi!,] on October 20, 2010[,] and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive] possession may be shown by establishing that the drug involved was subject due [sic] to his dominion or control.
Floyd argues that an essential element of possession is that the defendant be “aware of the presence and character” of the controlled substance. However, the State contends that instruction S-8, as given, properly instructed the jury on the law of possession. Instruction S-8 stated the following:
Possession, as the term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person.
(Emphasis added).
¶ 11. When refusing instruction D-5, the trial court noted that instruction S-8 was identical to the model jury instruction on actual and constructive possession. The State agrees that whether a defendant was “aware of the presence and character” of the drug is an element of constructive possession, but argues that the “knowledge” and “intent” language in S-8 is essentially the same as the “aware of the presence and character” language most commonly cited in jury instructions. See Mosley v. State, 89 So.3d 41, 48 (¶ 25) (Miss.Ct.App.2011) (noting jury instruction with “aware of character and presence” language has been approved numerous *888 times over the years). In Hudson v. State, 30 So.3d 1199, 1206 (¶ 19) (Miss.2010), the Mississippi Supreme Court stated that the State was required to prove Hudson was “aware of the presence and character of the cocaine[,] ... in other words, the prosecution had to prove both ‘knowledge’ and ‘intent;’ i.e., that [Hudson] knew it was in his pockets, knew it was cocaine, and intended to possess it.” Furthermore, the statute under which Floyd was indicted states “it is unlawful for any person knowingly and intentionally to ... possess with intent to sell ... a controlled substance.” Miss.Code Ann. § 41-29-139(a)(1) (Rev.2013) (emphasis added). We find no error by the' trial court in refusing instruction D-5 for the following reasons: instruction S-8 was identical to the model jury instruction; instruction S-8 used similar language to section 41-29-139(a)(1); and instruction D-5 was fairly covered in instruction S-8. This issue is without merit.
II. PRIOR CONVICTIONS
¶ 12. In his next issue on appeal, Floyd contends the trial court erred in allowing the jury to hear of his prior convictions for transfer of a controlled substance. Prior to trial, Floyd filed a motion in limine to exclude evidence of his prior convictions. The trial court denied Floyd’s motion, finding that evidence of these convictions was admissible under Mississippi Rule of Evidence 404(b)[1] to prove intent. The trial court relied upon this Court’s decision in Hosey v. State, 77 So.3d 507, 516 (¶ 34) (Miss.Ct.App.2012), where we stated that “[i]t is settled in Mississippi jurisprudence that under [Rule] 404(b) evidence of prior sales is admissible to show or prove intent to distribute.” (Quoting Mitchell v. State, 754 So.2d 519, 524 (¶ 16) (Miss.Ct.App.1999)). The trial court did give a limiting instruction to the jury, S-4, which stated the following:
The Court instructs the Jury that any evidence of prior bad acts or crimes of the defendant may be considered solely for the purpose of determining the defendant’s intent or knowledge in this case. If the defendant has committed bad acts or crimes, they are not evidence corroborating or suggesting that the defendant is guilty of the crime charged in this case.
In reviewing whether a trial court properly admitted or excluded evidence, we apply our familiar abuse-of-discretion standard. Brown v. State, 965 So.2d 1023, 1026 (¶ 10) (Miss.2007). Pursuant to Hosey, we cannot find the trial court abused its discretion in allowing Floyd’s prior convictions into evidence.
III. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
¶ 13. Floyd argues the evidence was insufficient to support the guilty verdict. In the alternative, Floyd contends the verdict was against the overwhelming weight of the evidence.
A. SUFFICIENCY OF THE EVIDENCE
¶ 14. Regarding whether the evidence was legally sufficient to support the verdict, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any ra *889 tional trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. The jury determines the credibility of witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 15. As previously stated, Floyd was convicted of possession of a controlled substance with intent to distribute under section 41 — 29—139(a)(1), which states “it is unlawful for any person knowingly and intentionally to ... possess with intent to sell ... a controlled substance.” The Mississippi Supreme Court has stated that for a conviction of possession of a controlled substance to stand, “there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Glidden v. State, 74 So.3d 342, 345-46 (¶ 12) (Miss.2011) (internal citations omitted). In other words, the State has “to prove both ‘knowledge’ and ‘intent.’ ” Hudson, 30 So.3d at 1206 (¶ 19). However, this possession “need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself it is not adequate in the .absence of other incriminating circumstances.” Cheatham v. State, 12 So.3d 598, 601 (¶ 7) (Miss.Ct.App.2009) (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)).
¶ 16. The State’s evidence showed the following: the police received a tip that Floyd was distributing cocaine from the apartment in question; that same day, Floyd was seen entering the apartment; the police conducted a traffic stop shortly after Floyd was seen leaving the apartment; Floyd attempted to swallow a white powder; a white powder was found on Floyd’s face and in his car; Floyd was carrying a large amount of cash; Keisha told the police Floyd lived with her at the apartment in question; and personal items belonging to Floyd were found in the room where the cocaine and digital scales were discovered. Although Boose claimed ownership of the drugs, it is clear the jury found his testimony was not credible after hearing the taped conversation between Floyd and Boose at the correctional center.
¶ 17. Viewing the evidence in the light most favorable to the State, a reasonable juror could find beyond a reasonable doubt that Floyd was guilty. Therefore, this issue is without merit.
B. WEIGHT OF THE EVIDENCE
¶ 18. Floyd also argues the verdict was against the overwhelming weight of the evidence. This Court will not disturb a jury’s verdict unless it “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). Additionally, an appellate court must view the evidence in the light most favorable to the verdict. Knight v. State, 72 So.3d 1056, 1065 (¶ 34) (Miss.2011). Viewing the evidence in this light, we cannot say that allowing Floyd’s guilty verdict to stand would sanction an unconscionable injustice. This issue is without merit.
IV. HABITUAL-OFFENDER STATUS
¶ 19. Floyd argues the State failed to prove his habitual-offender status. Prior to trial, the indictment was amended to charge Floyd as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007), which states as follows:
*890 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
To establish Floyd’s habitual-offender status, the State produced an order from the Harrison County Circuit Court indicating Floyd pleaded guilty to three counts of “transfer of a controlled substance” on the same day, March 1, 1999, and was sentenced to three concurrent fifteen-year sentences. The order states Floyd was found guilty of “transfer of a controlled substance in B24019800717 and transfer of a controlled substance — 2 cts. in B24019800865.” The record also includes an order revoking Floyd’s probation on these three sentences and ordering him to serve three concurrent six-year sentences.
¶ 20. The record does not include any further information on these three charges, as required by section 99-19-81— whether they constitute at least two prior charges “separately brought and arising out of separate incidents at different times.” The Mississippi Supreme Court has cautioned against the “tendency to routinely allow the [S]tate to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant [a] habitual offender, then routinely pass out [the] sentence.... ” Young v. State, 507 So.2d 48, 50 (Miss.1987) (quoting Seely v. State, 451 So.2d 213, 215 (Miss.1984)). The Young court further stated: “We wish to leave no doubt that the requirement of a bifurcated trial means a full two-phase trial prior to any finding that the defendant is [a] habitual offender and subject to enhanced punishment.” Id. It appears this same scenario occurred during Floyd’s sentencing.
¶ 21. Floyd is correct that the State failed to follow the statutory requirements to prove his habitual-offender status; thus, we must vacate Floyd’s sentence and remand for resentencing. On resen-tencing, we note that the “State is not entitled to a second chance to prove a defendant’s habitual-offender status on remand, because that would violate the prohibition against double jeopardy under the Mississippi Constitution.” Grayer v. State, 120 So.3d 964, 969-70 (¶ 20) (Miss.2013). On remand, Floyd should be sentenced as a nonhabitual offender.
¶ 22. We note that Floyd was given an enhanced sentence for being a subsequent offender under Mississippi Code Annotated section 41-29-147 (Rev.2013). However, Floyd does not take issue with the application of this particular sentence enhancement.
V. FIELD TEST
¶ 23. Floyd argues the trial court erred in allowing the State to present evidence concerning the results of a field test for cocaine. After opening statements, Floyd objected to any mentioning of a field test for cocaine during his traffic stop. The State responded that it had no intention of mentioning the field test during trial. During cross-examination of Officer Johnson, Floyd repeatedly asked him about the white powder removed from Floyd’s mouth, whether the substance was tested, and the results of any testing. Floyd specifically asked Officer Johnson: “So scientifically speaking, we don’t know whether it was a controlled substance?” *891 Floyd continued to ask Officer Johnson several variations of this question. Based upon this line of questioning, the State argued Floyd had opened the door by allowing Officer Johnson to give an explanation concerning the results of the field test. The trial court agreed. On redirect, the State questioned Officer Johnson about conducting the field test and its result.
¶ 24. Floyd does not take issue with the trial court’s ruling on whether he opened the door to this testimony. Rather, Floyd contends that Officer Johnson lacked personal knowledge, since another officer conducted the field test, and Officer Johnson’s testimony exceeded the scope of his expert qualifications. During trial, the State offered Officer Johnson as an expert witness in drug investigations and drug trafficking. Floyd elected not to voir dire Officer Johnson.
¶ 25. In regard to whether Officer Johnson lacked personal knowledge since Officer Koewers actually conducted the field test, Floyd relies upon Mississippi Rule of Evidence 602 for support. Rule 602 states that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.” It is clear from the record and Officer Johnson’s testimony that, as the case detective, he was present during the entire investigation, including the traffic stop where he witnessed Officer Koewers perform the field test on the white powder from Floyd’s mouth. Officer Johnson saw the results from the field test, which indicated the presence of cocaine. The record shows Officer Johnson had personal knowledge of the field test, regardless of whether he physically conducted the test.
¶ 26. Floyd’s other argument is that Officer Johnson’s testimony exceeded the scope of his expert qualifications— namely that he was qualified in the field of drug investigation and drug trafficking, not in the fields of chemistry or forensic science. However, Floyd, not the State, elicited the information from Officer Johnson concerning how the field test was conducted and its results. Since Floyd elicited this information during cross-examination of Officer Johnson, it is disingenuous to now complain of error. See Caston v. State, 823 So.2d 473, 502 (¶ 101) (Miss.2002) (appellant “cannot complain on appeal of alleged errors invited or induced by himself’) (citation omitted). This issue is without merit.
¶ 27. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE IS AFFIRMED. THE SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $2,000,000 IS VACATED, AND THIS CASE IS REMANDED FOR RESENTENCING AS A NONHABITUAL OFFENDER. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ, CONCUR. CARLTON, J„ DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Rule 404(b) states that "[ejvidence of other crimes ... is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may; however, be admissible for other purposes such as proof of ... intent....”