# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01321-COA

**KENNETH R. GOLDSMITH A/K/A KENNETH GOLDSMITH A/K/A KENNETH RAY GOLDSMITH**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2014 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF GRAND LARCENY, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE WITHOUT ELIGIBILITY FOR PAROLE |
| DISPOSITION: | AFFIRMED - 01/05/2016 |
| MOTION FOR REHEARING FILED: | 01/27/2016 - DENIED; AFFIRMED - 05/17/2016 |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

**MODIFIED OPINION ON MOTION FOR REHEARING**

¶1.     The motion for rehearing is denied.  We withdraw our original opinion and substitute this modified opinion.

¶2. Kenneth R. Goldsmith was convicted of grand larceny in the Circuit Court of Rankin County, Mississippi. He was sentenced as a habitual offender to serve life without parole. Goldsmith raises the following issues on appeal: (1) the evidence was insufficient to support the verdict, (2) he should have been sentenced under the original indictment, (3) the State failed to prove his habitual-offender status, (4) his sentence was disproportionate to the crime, (5) he received ineffective assistance of counsel, and (6) cumulative error. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On October 15, 2012, David Purvis, vice president of safety at Ergon Trucking in Flowood, Mississippi, noticed suspicious activity in the Ergon parking lot involving a man in a Chevrolet Trailblazer.[1] Purvis reported the suspicious activity and the Trailblazer's license-plate number to the Flowood Police Department.

¶4. On October 19, 2012, at 8:15 a.m., Barton Lampton parked his truck in the parking lot at Ergon, where he worked. Lampton's Giant TCR Advanced SL1 bicycle was in the back of the truck. According to Lampton, the bicycle retailed for $6,000 to $6,500. But because Lampton was friends with the owner of a bicycle shop, he was able to purchase a demo for $3,200.

¶5. Time-stamped photographs taken from the surveillance camera at Ergon show that at

---

[1] The Trailblazer belonged to Goldsmith's fiancée, Lillian Harvey. The following people had access to the Trailblazer: Harvey; her son, Christopher; her cousin, Smootie; and Goldsmith.

8:37 a.m., the same Trailblazer from October 15 drove through Ergon's smaller parking lot. At 8:40 a.m., the Trailblazer drove into Ergon's larger parking lot where Lampton's truck was parked. The network administrator at Ergon was unable to zoom in to the photographs to see who was in the vehicle.

¶6.     Ian Gallman, an employee at USA Pawn and Jewelry on Woodrow Wilson Avenue in Jackson, Mississippi, identified the pawn receipt where Goldsmith pawned Lampton's bicycle.[2] Gallman estimated Goldsmith would have arrived at the pawn shop between 9:00 a.m. and 9:10 a.m. The transaction was complete at 9:20 a.m. According to Gallman, the retail value of the bicycle was $7,000. However, Gallman paid Goldsmith $100 because that is the amount Goldsmith requested. Gallman later listed the bicycle on Craigslist for $4,000.

¶7.     At trial, Goldsmith denied stealing the bicycle and denied having been in the Ergon parking lot on October 15 or 19. Goldsmith testified he was driving the Trailblazer on the morning of October 19 when his stepson, Christopher, and his stepson's friend asked him to pick them up at the Citgo gas station on Lakeland Drive. Goldsmith could not recall the friend's name.

¶8.     On direct examination, Goldsmith testified that he paid the friend $45 for the bicycle. The friend then told Goldsmith to wait fifteen to twenty minutes. If he did not bring Goldsmith his money back, the friend stated Goldsmith could sell the bicycle. Goldsmith then drove from the Citgo to the pawn shop and pawned the bicycle for $100 to pay an electrical bill.

---

[2] During the transaction, Goldsmith was required to show photo identification.

¶9. On cross-examination, Goldsmith's testimony initially conformed to his testimony on direct. But later on cross-examination, Goldsmith testified that after picking up his stepson and his stepson's friend from the Citgo, he drove the Trailblazer from the Citgo to the Parkside Inn on Interstate 55 North in Jackson, where he took fifteen to twenty minutes to service an air conditioner. Goldsmith then drove the Trailblazer from the Parkside Inn to the pawn shop.

¶10. During a hearing on Goldsmith's prior convictions, it was established that he had a total of at least eleven prior felony convictions: five uttering forgery; three theft by receiving; two commercial burglary; and one possession of a firearm by an incarcerated person. Goldsmith also had a total of at least two prior convictions that qualify as crimes of violence: one robbery conviction and one aggravated-assault conviction.

¶11. At the conclusion of the State's case, Goldsmith moved for a directed verdict, which was denied. Goldsmith did not renew his motion at the close of all evidence. On December 13, 2014, Goldsmith was convicted of grand larceny, and on February 26, 2014, he was sentenced as a violent habitual offender to life in prison. On June 30, 2014, Goldsmith filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion, and Goldsmith now appeals.

**DISCUSSION**

**I.    Insufficient Evidence**

¶12. Goldsmith claims the evidence was insufficient to support his conviction for grand larceny. Specifically, Goldsmith claims the trial court erred in denying his motions for a

4

directed verdict and JNOV or, in the alternative, a new trial.

### A. Procedural Bar—Directed Verdict

¶13.    "To preserve the issue of denial of a directed verdict, the defense must move for [a] directed verdict at the close of the State's [case]." *Page v. State*, 990 So. 2d 760, 761 (¶9) (Miss. 2008) (citing *Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989)). "If a motion for a directed verdict is denied and the defendant introduces evidence on his own behalf, the defendant must renew his motion for [a] directed verdict at the close of all evidence." *Id.*

¶14.    Goldsmith moved for a directed verdict at the close of the State's case-in-chief, which was denied. Goldsmith then presented evidence on his own behalf. At the conclusion of all evidence, Goldsmith did not renew his motion for a directed verdict. Therefore, Goldsmith is barred from raising the issue on appeal.

### B. Procedural Bar Notwithstanding

¶15.    Procedural bar notwithstanding, we find that the trial court did not err in denying Goldsmith's motion for a directed verdict or his motion for a JNOV or new trial.

¶16.    "A directed verdict and a motion for JNOV both challenge the sufficiency of the evidence presented to the jury." *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). "Therefore, our standard of review is the same for both." *Id.* "This Court will consider the evidence in the light most favorable to the State, giving the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'" *Id.* (quoting *Collier v. State*, 711 So. 2d 458, 461 (¶11) (Miss. 1998)). "The relevant question then becomes whether 'any rational trier of fact

5

could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

¶17.    "Unlike a motion for a directed verdict or JNOV, a motion for a new trial challenges the weight of the evidence." *Id.* at (¶12) (citing *Sheffield v. State*, 749 So. 2d 123, 127 (¶16) (Miss. 1999)). "This Court's standard of review of a trial court's denial of a motion for a new trial is abuse of discretion." *Id.* (citing *Johnson v. State*, 904 So. 2d 162, 167 (¶11) (Miss. 2005)). "A new trial will not be awarded unless 'the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" *Id.*

¶18.    In his motion for a directed verdict, Goldsmith claimed there was insufficient evidence to establish the value of the bicycle met the monetary requirement for grand larceny. In his appeal, Goldsmith claims there was insufficient evidence to establish he committed the crime.[3]  We will address each argument in turn.

### 1.    Value of the Bicycle

¶19.    Goldsmith claims there was insufficient evidence to establish the value of the bicycle met the monetary requirement for grand larceny.

¶20.    Grand larceny is defined as "taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more . . . ." Miss.

---

[3] "Motions for a directed verdict must be specific and not general in nature." *Sheffield*, 749 So. 2d at 126 (¶10) (quoting *Banks v. State*, 394 So. 2d 875, 877 (Miss. 1981)). Goldsmith did not specifically challenge the sufficiency of the evidence with respect to whether he committed the crime in his motion for a directed verdict or in his motion for a JNOV or new trial. However, we will continue to address the issue.

6

Code Ann. § 97-17-41(1) (Rev. 2006).

¶21. "In *Smith v. State*, 881 So. 2d 908 (Miss. Ct. App. 2004), [the] defendant was convicted after the victim's father testified that he paid between $3,000 and $4,000 for truck rims that were later stolen." *Williams v. State*, 994 So. 2d 821, 826 (¶14) (Miss. Ct. App. 2008). The defendant appealed and claimed his conviction should be reversed based on insufficient proof of the value of the rims. *Id.* This Court stated:

> [T]he victim's father testified that he paid between [$3,000 and $4,000] for the rims. Although this was not direct testimony of the value of the rims, we find that it circumstantially provided a basis from which the jury could infer that the rims were worth at least $250 because of the amount of the purchase price. While this is not the strongest evidence that could have . . . and should have been presented, we cannot say that no fair-minded juror could find [the defendant] guilty on this evidence or that allowing the verdict to stand will amount to an unconscionable injustice.

*Id.* (citing *Smith*, 881 So. 2d at 910-11 (¶11)).

¶22. Lampton testified that the bicycle retails for $6,000 to $6,500. He also testified that he paid $3,200 for the bicycle. Furthermore, Gallman testified that the bicycle retails for $7,000. Gallman also testified that he listed the bicycle on Craigslist for $4,000. This issue is without merit.

## 2. Sufficiency of the Evidence

¶23. Goldsmith also claims there was insufficient evidence to establish he committed the crime. Specifically, Goldsmith claims the State failed to establish he was the person driving the Trailblazer, or that the person driving the Trailblazer was the person who stole the bicycle.

¶24. "That the only evidence supporting [the] conviction is circumstantial does not mean

7

the evidence is insufficient." *Walton v. State*, 642 So. 2d 930, 932 (Miss. 1994). "[The Mississippi Supreme Court has] consistently held that the State may prove a crime solely by circumstantial evidence." *Id.* "[T]he test to be applied is whether 'a rational fact[-]finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged.'" *Presley v. State*, 994 So. 2d 191, 194 (¶10) (Miss. 2008) (quoting *Shields v. State*, 702 So. 2d 380, 382 (Miss. 1997)). "However, we must view the evidence in a light most favorable to the verdict." *Id.* (citing *Jones v. State*, 819 So. 2d 558, 561 (¶11) (Miss Ct. App. 2002)).

¶25.    "Under Mississippi law, possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt." *Seales v. State*, 90 So. 3d 37, 42 (¶25) (Miss. 2012) (quoting *Rushing v. State*, 461 So. 2d 710, 712 (Miss. 1984)). "[T]he explanation, however, must both be reasonable and credible." *Presley*, 994 So. 2d at 195 (¶20) (quoting *Pearson v. State*, 248 Miss. 235, 158 So. 2d 710, 714 (1963)). "If the explanation is not reasonable and credible, the evidence is sufficient for larceny." *Id.* (citing *Wilson v. State*, 237 Miss. 294, 301, 114 So. 2d 677, 680 (1959)).

¶26.    The evidence showed that Goldsmith was in possession of the bicycle the same morning it was stolen. However, Goldsmith's explanation as to how he gained possession is demonstrably false.

¶27.    Between 8:40 a.m. and (at the latest) 9:10 a.m., Goldsmith claims he drove the Trailblazer to the Citgo on Lakeland Drive, where he paid $45 for the bicycle; may or may

not have waited fifteen to twenty minutes; drove the Trailblazer to the Parkside Inn on Interstate 55 North; serviced an air conditioner for fifteen to twenty minutes; and then drove the Trailblazer to the pawn shop on Woodrow Wilson.

¶28. Lampton parked his truck, with the bicycle in the back, at Ergon at 8:15 a.m. Time-stamped photographs place the Trailblazer in the parking lot at Ergon at 8:40 a.m. It was estimated that Goldsmith arrived in the Trailblazer at the pawn shop between 9:00 a.m. and 9:10 a.m. According to the pawn receipt, the transaction was completed at 9:20 a.m.

¶29. From these facts, there was sufficient evidence for the jury to find Goldsmith guilty of grand larceny. This issue is without merit.

## II. Sentence

¶30. Goldsmith claims (1) he should have been sentenced under the original indictment, (2) the State failed to prove his habitual-offender status, and (3) his sentence is disproportionate to the crime.

### A. Indictment

¶31. Goldsmith claims he should have been sentenced under the original indictment.

¶32. The trial court allowed the State to amend Goldsmith's indictment from Mississippi Code Annotated section 99-19-81 (Rev. 2015) to section 99-19-83 (Rev. 2015), and ordered "that the Circuit Clerk attach a copy of the *order* for amendment to the indictment[.]" (Emphasis added). Goldsmith claims the *amendment* was never attached to the indictment, and therefore, he should have been sentenced under section 99-19-81 and not section 99-19-83.

9

¶33. An amendment to an indictment is reviewed de novo. *Lawson v. State*, 154 So. 3d 926 (¶12) (Miss. Ct. App. 2015). "Rule 7.09 allows indictments to be amended 'to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offense justifying such enhancement[.]'" *Id.* (quoting URCCC 7.09). "Such an amendment is allowed as long as 'the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.'" *Id.*

¶34. It seems Goldsmith is arguing that he did not have notice of the amendment. But the motion to amend the indictment was filed November 19, 2013, and the indictment was amended on the day of Goldsmith's trial—December 9, 2013. A copy of the order was placed in the record, and Goldsmith was sentenced on February 26, 2014. This issue is without merit.

### B. Habitual-Offender Status

¶35. Goldsmith claims the State failed to prove his habitual-offender status.

¶36. As discussed, Goldsmith's indictment was amended to charge him as a habitual offender under section 99-19-83, which states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department

of Corrections.

¶37. To establish Goldsmith's habitual-offender status, an employee of the Arkansas Department of Corrections testified that Goldsmith was convicted of aggravated assault—a felony and a crime of violence[4]—in 1997. According to the pen pack, which was admitted into evidence, Goldsmith's confinement term was sixty months, or five years. And the witness testified that Goldsmith served more than one year. In addition, an employee of the Mississippi Department of Corrections testified that Goldsmith was convicted of uttering a forgery—a felony—in 2007. According to the pen pack, which was also admitted into evidence, Goldsmith served one year and sixty-four days.

¶38. Goldsmith cites to *Floyd v. State*, 155 So. 3d 883 (Miss. Ct. App. 2014), for support. In *Floyd*, the State produced an order indicating the defendant pleaded guilty to three counts of "transfer of a controlled substance" on the same day. *Id.* at 890 (¶19). The record did not indicate that there were two charges "separately brought and arising out of separate incidents at different times." *Id.* at (¶20). Here, the record indicates Goldsmith's charges were "separately brought and arising out of separate incidents." This issue is without merit.

### C. Disproportionate Sentence

¶39. Goldsmith claims his sentence is disproportionate to the crime.

¶40. "[T]he general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Wall v. State,* 718 So. 2d 1107, 1114 (¶29) (Miss. 1998) (quoting *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996)).

---

[4] Aggravated assault is a crime of violence within the meaning of the habitual-offender statute. *Davis v. State*, 680 So. 2d 848, 851 (Miss. 1996).

Furthermore, "as long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and [the appellate] court will not reverse it." *Id.*

¶41.    As discussed, Goldsmith's sentence conforms to the requirements of the habitual-offender statute.  This issue is without merit.

### III.    Ineffective Assistance

¶42.    Goldsmith claims he received ineffective assistance of counsel.  First, he contends that his trial counsel's use of drugs and alcohol while representing him constituted ineffective assistance of counsel.  Second, he contends that his trial counsel was ineffective for failing to object to the trial court's response to a jury question.  Finally, he contends that his trial counsel was ineffective for failing to object to sentencing errors.  Goldsmith also claims his appellate counsel's performance was ineffective because counsel failed to argue that Goldsmith's trial counsel was ineffective and failed to request the full record on appeal.

¶43.    In order to establish ineffective assistance of counsel, Goldsmith must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and adopted by the Mississippi Supreme Court in *Stringer v. State*, 454 So. 2d 468, 476-77 (Miss. 1984). Goldsmith must demonstrate: (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defense. *Braggs v. State*, 121 So. 3d 269, 272 (¶9) (Miss. Ct. App. 2013).  "The *Strickland* test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial." *Id.* at 273 (¶11) (citing *Conner v. State*, 684 So. 2d 608, 610 (Miss. 1996)).

¶44. Generally, ineffective-assistance claims are raised during postconviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008). However, a claim of ineffectiveness may be raised on direct appeal "if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b). If the record cannot support a claim of ineffectiveness, then the appropriate action is to deny relief, preserving the defendant's right to argue the same issue through a petition for postconviction relief. *Braggs*, 121 So. 3d at 272 (¶9).

### A. Drugs and Alcohol

¶45. Goldsmith claims that his trial counsel's use of drugs and alcohol while representing him constituted ineffective assistance of counsel. The record lacks sufficient evidence to adequately address Goldsmith's claim. Therefore, we dismiss this claim so that Goldsmith, if he so chooses, may raise it in a motion for postconviction relief.

### B. Jury Question

¶46. Goldsmith claims his trial counsel was ineffective for failing to object to the trial court's response to the jury. The jury submitted the following question: "What time was the 911 call made by Purvis[?]" And the trial court responded: "You've received all the evidence introduced in the trial." Because a jury is to make its decision based on the evidence presented at trial, there was no error. Therefore, counsel was not ineffective. *See Moffett v. State*, 156 So. 3d 835, 870 (¶110) (Miss. 2014).

### C. Sentencing

¶47. Goldsmith claims his trial counsel was ineffective for failing to object to sentencing errors. As discussed, there were no errors. Therefore, counsel was not ineffective. *See id.*

### D. Appellate Counsel

¶48. Goldsmith also claims that he was, or is, being denied effective assistance of appellate counsel. He contends that his appellate counsel failed to argue that Goldsmith's trial counsel was ineffective and failed to request the complete record on appeal. However, this assignment of error is premature because Goldsmith's claim involves representation that is still ongoing and pending before this Court. *See Ratliff v. State*, 162 So. 3d 842, 844 (¶3) (Miss. Ct. App. 2014). Addressing this issue at this stage would be improper because Goldsmith has yet to suffer the alleged prejudice that he complains of, pending the outcome of this appeal. *See id.* Therefore, it is impossible for Goldsmith to satisfy the prejudice prong set forth in *Strickland*. *See id.*

### IV. Cumulative Error

¶49. Finally, Goldsmith claims that the cumulative effect of all the errors committed during trial, even if not reversible in themselves, combine to make up reversible error.

¶50. "[E]rrors in the lower court that do not require reversal standing alone may nonetheless[,] taken cumulatively[,] require reversal." *Conley v. State*, 790 So. 2d 773, 807 (¶141) (Miss. 2001) (quoting *Jenkins v. State*, 607 So. 2d 1171, 1183 (Miss. 1992)). "However, 'where there was no reversible error in any part, so there is no reversible error to the whole.'" *Id.* (citation omitted). Because we find no error, this issue is without merit.

¶51. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**