## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01484-COA

LARRY LEWIS A/K/A LARRY D. LEWIS                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                APPELLEE

DATE OF JUDGMENT:                09/15/2016
TRIAL JUDGE:                     HON. SMITH MURPHEY
COURT FROM WHICH APPEALED:       PANOLA COUNTY CIRCUIT COURT,
                                 SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          PATRICK E. STEGALL
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BILLY L. GORE
DISTRICT ATTORNEY:               JOHN W. CHAMPION
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 11/28/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Following a jury trial in the Panola County Circuit Court on August 15-16, 2016, Larry Lewis was convicted of statutory rape of a child under fourteen and statutory rape of a child over fourteen but under sixteen. Lewis was sentenced as a habitual offender, under Mississippi Code Annotated section 99-19-83 (Rev. 2015), to life imprisonment without parole in the custody of the Mississippi Department of Corrections. Aggrieved, Lewis filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. Lewis timely appeals. After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Charlene and her five children, including J.T.,[1] moved in with Lewis in late 2012 or early 2013.  At the time, J.T. was around twelve or thirteen years old.  J.T. testified that she began having a sexual relationship with Lewis around this time.  At the time, Lewis was approximately fifty years old or older.

¶3.     Robert Harris, J.T.'s great uncle, contacted the Department of Human Services (DHS) to report an inappropriate relationship between J.T. and Lewis.  DHS interviewed J.T. and her family regarding the allegations of the sexual relationship.  Each of the family members, including J.T., denied the existence of a sexual relationship.

¶4.     Shortly after, Charlene and her children moved from Lewis's home.  Charlene testified that although she and her children moved out, J.T. continued to visit Lewis alone.  However, the family returned to live with Lewis sometime later in 2014.

¶5.     J.T. stated that she and Lewis stayed in his house together in one bedroom, while her mother and siblings slept in a camper located in the back of Lewis's property.  Charlene denied that J.T. lived with Lewis alone; however, she testified that she liked to party and was frequently out late at night.  As a result, the children were left unattended in the camper while Lewis was in the house.

¶6.     In 2015, Zeandra Butler, Lewis's biological daughter, notified DHS that her father and J.T. were involved in an inappropriate relationship.  A representative from DHS interviewed J.T. at her school.  During this interview, J.T. reported that she and Lewis were involved in

---

[1] To protect confidentiality, we will refer to the victim and any other minors by their initials throughout this opinion.  And we will refer to the mother by her first name only.

a sexual relationship and had been involved since she was thirteen years old. At the time of the second DHS interview, J.T. was approximately sixteen years old.

¶7. Subsequently, Lewis was arrested and charged with statutory rape under Mississippi Code Annotated section 97-3-65(1)(a) and (1)(b) (Rev. 2014). Lewis was convicted in the Circuit Court of Panola County and sentenced to life imprisonment under the habitual-offender statute. Lewis filed a motion for a JNOV or, in the alternative, a new trial, which the circuit court denied. Lewis appeals.

## STANDARD OF REVIEW

¶8. "To preserve the issue of denial of a directed verdict, the defense must move for a directed verdict at the close of the State's case." *Goldsmith v. State*, 195 So. 3d 207, 212 (¶13) (Miss. Ct. App. 2016). "If a motion for a directed verdict is denied and the defendant introduces evidence on his own behalf, the defendant must renew his motion for a directed verdict at the close of all evidence." *Id*. "When considering a trial court's denial of a motion for judgment notwithstanding the verdict, [the reviewing court's] standard of review is de novo." *Gilmer v. State*, 955 So. 2d 829, 833 (¶6) (Miss. 2007).

## DISCUSSION

¶9. Lewis asserts that he was entitled to a directed verdict, because the evidence was insufficient to support his guilty verdicts for counts I and II. He further asserts that the judge incorrectly denied his posttrial JNOV motion.

¶10. However, "[b]ecause motions for directed verdicts and JNOV motions require consideration of the evidence before the court when made, this Court properly reviews the

ruling on the last occasion the challenge was made in the trial court." *Shipp v. State*, 847 So. 2d 806, 811 (¶20) (Miss. 2003) (quotation marks omitted). Thus, in this case, we review the circuit court's denial of Lewis's JNOV motion.

¶11. Lewis was convicted of statutory rape of a child under the age of fourteen under Mississippi Code Annotated section 97-3-65(1)(b) (Rev. 2014). Under this code section, the crime of statutory rape is committed when:

> (b) A person of any age has sexual intercourse with a child who:
>
> > (i) Is under the age of fourteen (14) years;
> >
> > (ii) Is twenty-four (24) or more months younger than the person; and
> >
> > (iii) Is not the person's spouse.

¶12. Lewis was also convicted of statutory rape under Mississippi Code Annotated section 97-3-65(1)(a). This section provides:

> (1) The crime of statutory rape is committed when:
>
> > (a) Any person seventeen (17) years of age or older has sexual intercourse with a child who:
> >
> > > (i) Is at least fourteen (14) but under sixteen (16) years of age;
> > >
> > > (ii) Is thirty-six (36) or more months younger than the person; and
> > >
> > > (iii) Is not the person's spouse.

¶13. The facts established that Lewis and J.T. began a sexual relationship when J.T. was thirteen years old. J.T. reported that Lewis put his penis into her vagina on several occasions. At the time, Lewis was approximately fifty years old or older. J.T. also testified that her

relationship with Lewis continued until she was sixteen years old.

¶14.    However, Lewis asserts that there was no direct evidence to link him to the crime of statutory rape.  This Court has previously held that "[w]itness testimony alone is sufficient to secure a conviction."  *Jordan v. State*, 80 So. 3d 817, 831 (¶59) (Miss. Ct. App. 2010) (citing *Lattimer v. State*, 952 So. 2d 206, 224 (¶55) (Miss. Ct. App. 2006)).

¶15.    Furthermore, Meredith Rawl, an expert in the field of child abuse and forensic interviewing, conducted a forensic interview of J.T.  Rawl testified that based on her interview with J.T., her findings were consistent with that of a child who had been sexually abused.  Rawl was questioned regarding J.T.'s statement that J.T. had been sexually active with a boyfriend and Lewis.  However, Rawl stated that J.T.'s sexual history was irrelevant as far as their interview was concerned.

¶16.    Kristine Gable, a nurse coordinator at a rape crisis center, testified that J.T. informed her that she and Lewis had been having sex from the time she was thirteen years old until two months before the physical exam.  J.T. told Gable that Lewis used a condom twice; however, he did not ejaculate inside her vagina.

¶17.    Stanley Wayne Lee, Lewis's coworker, testified that he overheard Lewis discussing his girlfriend.  At the time, Lewis stated that his girlfriend was sixteen years old.  Shelby Houston, another one of Lewis's coworkers, testified that Lewis talked about a sixteen-year-old girl named "Pookie" or "Nookie"[2] that he met through the girl's mother.  Houston also stated that it appeared that Lewis liked the young girl and wanted to marry her.

---

[2] Rita Crump, J.T.'s paternal grandmother, testified that J.T.'s nickname is "Nookie."

¶18. Zeandra, Lewis's biological daughter, called DHS because she believed that Lewis and J.T. were involved in an inappropriate relationship. Lewis's other biological daughter, J.L., testified that Lewis told her that he and J.T. were having sex. Lewis also told J.L. he was going to marry J.T. and have kids with her.

¶19. Viewing the evidence in the light most favorable to the State, we find there was sufficient evidence for a reasonable jury to find Lewis guilty on both counts of statutory rape.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**