# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00310-COA

**DELTON RAY BURNS A/K/A DELTON BURNS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

DATE OF JUDGMENT:                 03/04/2021
TRIAL JUDGE:                             HON. TONI DEMETRESSE TERRETT
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                                               BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                               BY: ALLISON KAY HARTMAN
DISTRICT ATTORNEY:                 RICHARD EARL SMITH JR.
NATURE OF THE CASE:               CRIMINAL - FELONY
DISPOSITION:                          AFFIRMED - 09/06/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.    A Warren County grand jury indicted Delton Ray Burns for possession of more than ten grams but less than thirty grams of methamphetamine pursuant to Mississippi Code Annotated section 41-29-139(c) (Supp. 2016), as a subsequent drug offender pursuant to section 41-29-147 (Rev. 2013).  After a multi-day jury trial, Burns was found guilty and sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years to serve and five years suspended upon the condition that he successfully complete five years of post-release supervision pursuant to Mississippi

Code Annotated section 47-7-34 (Supp. 2014).[1] Burns appeals his conviction and sentence and requests a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 7, 2016, Stacy Monk Armstrong[2] and Burns went shopping together in Jackson. They both lived in Vicksburg and had known each other for several years. Shortly after arriving back in Vicksburg from their shopping trip, they went to the Ameristar Casino Hotel (hotel). At the hotel, Burns had some meth in a pipe, and they smoked it together. After they smoked the meth, they went to the casino and gambled. By this time, it was late, and all the places to eat were closed. Monk was uncertain how long they gambled, but at some point they returned to a room at the hotel together. Monk testified that Burns left again, but she stayed in the room and lay down. At some point the next morning, Burns returned to the hotel room, and they "got into it." According to Monk, Burns tried to strangle her, and he hit her in the side of her head with his fist. They both left the room, and she called hotel security for help.

¶3.     On the morning of April 8, 2016, investigator Catherine Trueheart with the Vicksburg Police Department responded to a call from the hotel regarding the "physical disturbance" between Burns and Monk. When Trueheart arrived, Burns was in the lobby surrounded by security. Trueheart spoke with the hotel security supervisor, James Perteck, and was advised

---

[1] At sentencing, the State elected to not go forward with the subsequent-offender enhancement.

[2] On the date of the incident, Stacy's last name was Monk. Therefore, we will refer to her as Stacy Monk or Monk throughout the remainder of this opinion.

2

that not only was Burns involved in a "physical disturbance" with Monk, but he also was trespassing on the hotel's property. Burns was arrested on the trespassing charge and transported to the police station by another patrol officer.[3] Trueheart remained at the hotel after Burns' arrest to take Monk's statement regarding the "physical disturbance." According to Monk, Burns had physically assaulted her and had taken her phone, keys, and wallet. Trueheart testified that Monk was very concerned about her wallet and asked Trueheart repeatedly to go look for it.[4] Monk was convinced that Burns had stolen it. However, Monk did not pursue criminal charges against Burns, and Burns was never arrested for assault or theft.

¶4.     A short time later, Vicksburg police were called back to the hotel by an employee because Monk was in the parking lot going through Burns' truck. Monk testified that she was "digging" in Burns' truck trying to find her wallet and cigarettes. She was approached by security and was told she could not go into Burns' truck to search for her wallet. Monk then left the hotel and went to her father's house.

¶5.     After Burns arrived at the Vicksburg PD, he was released from police custody when it was determined that he had been "reinstated" by the hotel and that the hotel was not going to pursue the trespassing charge. Burns returned to the hotel. By that time, Monk had called the deputy chief of police of Vicksburg, a friend of hers, and told him what had happened to her that morning. Monk also advised the deputy that the officers may want to search Burns'

---

[3] According to Perteck, Burns previously had been banned from the hotel property.

[4] Monk testified that she had just gotten her income tax refund but never stated an amount of the refund.

3

truck because he may have drugs on him. That information was somehow relayed to Vicksburg police department narcotics investigator Donnie Higgins. Higgins was advised that an anonymous caller reported that Burns would be in the hotel parking lot and that he was driving a blue pickup truck pulling a boat. Higgins was advised that Burns was in possession of narcotics.

¶6.     While on the way to the hotel, Higgins discovered that Burns had an outstanding misdemeanor warrant for contempt of court. Upon discovery of the outstanding warrant, Higgins called for additional units to assist in Burns' arrest. Higgins testified that he pulled into a nearby parking lot to await the arrival of the other units. He was parked in such a manner that he could watch as Burns was "pulling things out of his vehicle like he was going through clothing and whatnot, . . . digging through the contents of his vehicle[,] and he had stuff on the ground beside the vehicle." Once Burns put all the items back in the truck, he got into the vehicle and pulled out of the parking lot. Higgins initiated a traffic stop in order to arrest Burns for the outstanding warrant. After Burns was asked to step out of the vehicle, Higgins saw a zip-lock bag containing a "crystal[-]like substance" on the driver's seat where Burns had been sitting seconds before. Believing the substance was crystal meth, Higgins asked Lieutenant Merritt to conduct a field test of the substance. Merritt testified that a sample of the substance in the zip-lock bag tested positive for meth. The substance was subsequently sent to the Mississippi Forensic Laboratory (crime lab) for further testing. Eric Frazier, drug-section chief and forensic scientist for the crime lab, testified that the results of his testing showed that the substance was "Methamphetamine, 17.10 grams, plus or

minus, .04."

¶7.     After a three-day trial, on February 10, 2021, the jury found Barnes guilty as charged. A sentencing hearing was conducted on March 4, 2021, and the sentence was imposed as described above. Burns filed a "Motion for a J.N.O.V, or In the Alternative A New Trial," which was denied by the trial court. Burns then filed a notice of appeal.

## ANALYSIS

¶8.     Briefs for the appellant were filed both by Burns' appellate counsel and also by Burns pro se. We will address the issues raised in these briefs separately below.

### I.     Issues Raised in Appellant's Brief Filed by Counsel:

#### A.     The verdict is not against the overwhelming weight of the evidence.

¶9.     Burns' theory of defense at trial was that he did not know what was in the plastic bag that was found in the driver's seat of his truck. He told law enforcement that he thought it was detergent or some other substance. In commenting upon the evidence presented at trial, Burns' counsel urged the jury to consider the facts that show that Monk had a motive and an opportunity to place the meth in Burns' truck and then call the police. Accordingly, Burns argues that the State did not prove that he intentionally and knowingly possessed the meth found on the driver's seat.

¶10.    The evidence confirms that Monk had access to Burns' truck while Burns was in police custody. Burns' truck was in the hotel parking lot and was, apparently, unlocked. A video made by the hotel's surveillance cameras, which captured all of Monk's movements after she left the presence of Trueheart, was admitted into evidence. The video shows Monk

5

opening the unlocked passenger door and looking through the contents of the truck. She closed the passenger door and then looked through clothes lying in the bed of the truck. She continued around the truck and opened the driver's door. Again, she can be seen looking through the contents of the truck. She closed the driver's door of the truck when hotel security approached and advised her that she could not be in Burns' truck. The video then shows Monk leaving the premises.

¶11.   Monk testified that she did not put the meth in the truck. She further testified that she did not see the bag of meth when she was looking through the truck. Upon further questioning concerning her call to the Vicksburg police department, Monk testified that while she did not know that Burns had drugs in the truck, she knew that Burns always had drugs. In fact, as noted above, Burns had a pipe containing meth, which Monk and Burns had smoked together.

¶12.   Higgins testified that he watched as Burns searched the interior of the truck. Higgins saw Burns taking things out of the truck, putting them on the ground, and then putting them back into the truck before finally driving away in the truck. When Burns exited the truck after the traffic stop, Higgins testified that the bag containing the meth was in plain sight on the driver's seat.

¶13.   In *Wayne v. State*, 337 So. 3d 704, 715 (¶39) (Miss. Ct. App. 2022), this Court stated the applicable standard of review as follows:

> "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Jones* [*v. State*], 154 So. 3d [872,] 880 (¶24) [(Miss. 2014)]

6

(internal quotation mark omitted). In making a determination on this issue, "[w]e review the evidence in the light most favorable to the verdict . . . and review the trial court's denial of a motion for a new trial under an abuse-of-discretion standard." *Wilson* [*v. State*], 276 So. 3d [1241,] 1260 (¶48) [(Miss. 2018)] (citation omitted). In so doing, we bear in mind that "[w]hen evidence or testimony conflicts, the jury is the sole judge of the weight and worth of evidence and witness credibility." *Williams v. State*, 285 So. 3d 156, 160 (¶17) (Miss. 2019).

In the present case, the jury heard the testimony of the witnesses and saw the exhibits admitted into evidence. The jury saw the video of Monk's interaction with law enforcement and with Burns' truck. They heard Monk deny seeing the methamphetamine in the truck or placing it in Burns' truck. The jury also heard evidence that Burns had earlier produced a meth pipe that he smoked with Monk. The jury heard the officer's testimony that Burns had searched his own vehicle for several minutes before driving away and that the bag of meth was found in plain view in the exact spot where Burns had been sitting. They heard that Burns told the officers that he did not know what was in the bag. The jury heard Burns' counsel's argument that Burns did not know that the bag contained meth and that Monk was the person who placed the bag of meth in the truck.

¶14. The jury was properly instructed and returned a verdict finding, beyond a reasonable doubt, that Burns "intentionally or knowingly and unlawfully" possessed the bag of meth—the meth that was found on the driver's seat of his truck, which he was driving. It was found in plain view on the driver's seat immediately after Burns got out of the truck. Burns told the officers that he thought the bag contained detergent or some other substance. The jury resolved any conflicts in the evidence, determined the credibility of the witnesses, and weighed the evidence. We cannot say that the jury's verdict is "so contrary to the

7

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

### B. The trial court did not err in refusing instruction D-4, defining actual and constructive possession.

¶15. The trial court gave jury instruction S-2 which read as follows:

> Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention at a given time, to exercise control or dominion over the thing or object, either directly or through another person.

Burns argues that this instruction was an inadequate instruction on constructive possession and that the trial court erred by refusing Burns' proffered instruction D-4 which read as follows:

> The Court instructs the Jury, that to be in possession of a controlled substance, there must be sufficient facts to warrant a finding beyond a reasonable doubt that the defendant was aware of the presence and character of the controlled substance and was intentionally and consciously in possession of the controlled substance. It need not be actual physical possession. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. Constructive possession may only be shown by finding beyond a reasonable doubt that the controlled substance was subject to the defendant's dominion or control and the defendant was intentionally and consciously in constructive possession of the controlled substance.

¶16. Burns argues that instruction S-2 failed to advise the jury that proximity to the meth was not enough to find Burns was in constructive possession of the substance without other incriminating circumstances. This argument was rejected in *Adams v. State*, 228 So. 3d 832, 836-38 (¶¶15-19) (Miss. Ct. App. 2017), where this Court found that an instruction identical

8

to instruction S-2 in this case was "a correct statement of the law and sufficiently instructed the jury on the elements of constructive possession."

¶17.    Burns also argues that instruction S-2 was inadequate because it did not inform the jury that the State must prove beyond a reasonable doubt that Burns was "aware of the presence and character" of the meth and was intentionally and consciously in possession of it. Again, this argument had been rejected. In *Floyd v. State*, 155 So. 3d 883, 887-88 (¶11) (Miss. Ct. App. 2014), this Court considered instruction S-8, which is identical to instruction S-2 in the present case:

> When refusing instruction D-5, the trial court noted that instruction S-8 was identical to the model jury instruction on actual and constructive possession. The State agrees that whether a defendant was "aware of the presence and character" of the drug is an element of constructive possession, but argues that the "knowledge" and "intent" language in S-8 is essentially the same as the "aware of the presence and character" language most commonly cited in jury instructions. *See Mosley v. State*, 89 So. 3d 41, 48 (¶25) (Miss. Ct. App. 2011) (noting jury instruction with "aware of character and presence" language has been approved numerous times over the years). In *Hudson v. State*, 30 So. 3d 1199, 1206 (¶19) (Miss. 2010), the Mississippi Supreme Court stated that the State was required to prove Hudson was "aware of the presence and character of the cocaine[,] . . . *in other words, the prosecution had to prove both 'knowledge' and 'intent,'* i.e., that [Hudson] knew it was in his pockets, knew it was cocaine, and intended to possess it." Furthermore, the statute under which Floyd was indicted states "it is unlawful for any person knowingly and intentionally to . . . possess with intent to sell . . . a controlled substance." Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2013). . . . We find no error by the trial court in refusing instruction D-5 for the following reasons: instruction S-8 was identical to the model jury instruction; instruction S-8 used similar language to section 41-29-139(a)(1); and instruction D-5 was fairly covered in instruction S-8. This issue is without merit.

(Emphasis added). In the present case, instruction S-2 required the jury to find that Burns "knowingly ha[d] both the power and the intention at a given time, to exercise control or

dominion" over the meth. Based upon the above analysis, when instruction S-2 is read in conjunction with the other instructions given by the trial court, we find that the jury was properly instructed on the State's burden of proof in this case.

### II. Issues Raised in the Appellant's Pro Se Brief:

#### A. Burns did not receive ineffective assistance of counsel.

¶18. Burns contends that he received ineffective assistance of counsel at trial. He specifically identifies the following issues to show his attorney was ineffective: (1) he failed to file a motion to suppress the evidence; (2) he failed to object to Monk's testimony because she was not identified in discovery; (3) he failed to advise Burns that he had previously represented Monk, a State's witness; (4) he failed to make a demand for a speedy trial after having been instructed by Burns to do so; and (5) he failed to introduce into evidence the full video from the hotel.

¶19. In *Brady v. State*, 337 So. 3d 218, 228-29 (¶¶37-39) (Miss. 2022), the court addressed similar claims of ineffective assistance of counsel on direct appeal:

> Ordinarily, claims of ineffective assistance of counsel are not addressed on direct appeal. *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003). Under Mississippi Rule of Appellate Procedure 22(b), "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." Additionally, this Court has explained:
>
> > It is unusual for this [C]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim. . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief,

10

preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge."

*Wilcher*, 863 So. 2d at 825 (citations omitted) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (Miss. Ct. App. 2002)).

Here, the record does not affirmatively show ineffectiveness of constitutional dimensions nor have the parties stipulated that the record is adequate to allow this Court to make the finding without consideration of the findings of the trial judge. Moreover, the issue of whether Brady's counsel was ineffective by failing to make certain objections is not fully apparent from the record. Because Brady did not challenge the admission of the evidence, the record was not developed.

"Complaints concerning counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy." *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995) (citing *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984)). Claims based on defense counsel's trial strategy and tactics require a consideration of facts beyond the contents and face of the record. *Bishop v. State*, 282 So. 3d 633, 644 [(¶47)] (Miss. Ct. App. 2019). Because the record is insufficient to evaluate Brady's ineffective-assistance-of-counsel claim, his claim is denied, preserving his right to raise the issue in a petition for post-conviction relief.

In the case at bar, the State did not stipulate that the record was sufficient for us to consider the merits of Burns' claim of ineffective assistance of counsel on direct appeal. After reviewing the record and Burns' claim, we find that the record is insufficient to evaluate the claim and, therefore, should be denied, "preserving his right to raise the issue in a petition for post-conviction relief."

### B. There was no "lack of evidence" to support Burns' conviction.

¶20. Under this heading in his pro se brief, Burns states only that "Stacy Monk is/was a known felony [sic] and should not have been allowed to testify in this cause and case number due to her poor credibility [sic] and unknown motives." Burns had the duty to make more than mere assertions and should have made a meaningful argument in support of his assertion. Further, Burns had a duty to cite authorities to support his contention. Because he has done neither, this assignment of error is procedurally barred from review. *See Williams v. State*, 325 So. 3d 709, 720 (¶31) (Miss. Ct. App. 2021); *accord* M.R.A.P. 28(a)(7). In any event, this claim is without merit. Only persons convicted of perjury or subornation of perjury are disqualified from giving testimony at trial. *See* Miss. Code Ann. § 13-1-11 (Rev. 2016).

**C. The circuit court judge did not abuse his discretion.**

¶21. Under this heading in his pro se brief, Burns alleges that (1) the circuit judge should have recused herself at trial because she set his bond while serving as a Municipal Judge five years earlier; (2) the circuit judge "ventured outside the sentencing guid[e]lines to sentence this appellant to twenty years mandatory for exercising his rights to a trial by jury"; and (3) "the D.A. entered the jury room during deliberation." Again, because Burns has provided no meaningful argument and has not cited any authorities in support of his contentions, this assignment is also barred from appellate review. *See Williams*, 325 So. 3d at 720 (¶31); *accord* M.R.A.P. 28(a)(7).

¶22. In any event, Burns' contentions are without merit. There is no authority for his claim that setting bond should disqualify a judge from presiding over the trial. Circuit judges

12

routinely consider bond at arraignment. *See* MRCrP 15.1(b)(5). The statute that Burns was found to have violated provided for a minimum sentence of three years and a maximum sentence of twenty years. *See* Miss. Code Ann. § 41-29-139(c)(1)(D). The sentence imposed was a lawful sentence. There are no guidelines; Mississippi has only the statutory sentencing range. There is nothing in the record to support Burns' allegation that the district attorney had contact with the jurors during their deliberations.

## CONCLUSION

¶23. Burns' conviction and sentence are affirmed. Burns' claim of ineffective assistance of counsel is denied without prejudice to his opportunity to raise the issue in a motion for post-conviction collateral relief.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**