LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY AND FACTS
 

 ¶ 1. LaPriest Corteezes McMillan was indicted for burglary as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). He was accused of burglarizing a storage building at the Weems Mental Health Center (the Center). On October 9, 2007, a Scott County jury convicted McMillan of business burglary. McMillan was sentenced as a habitual offender to serve seven years in the custody of the Mississippi Department of Corrections without eligibility for parole.
 

 ¶ 2. The State presented the testimony of Michael Sanders and Stephanie Niven, who both testified that they observed a truck back up to the storage building on the night of the burglary. Both individuals work for Emergystat ambulance service and were near the Center on the night in question. Sanders called 911 to report the suspicious activity of the truck.
 

 ¶3. Officer Joey Hall, with the Forest Police Department, testified that he went to the Center in response to the call made by Sanders. He found McMillan and the truck, which was still backed up to the storage building. The bed of the truck contained two fans and a grill. McMillan stated that the items in the bed of the truck belonged to him. Teont Boyd, an employee of the Center, was summoned to the scene. He identified the items as property of the Center. He also stated that the grill and fans were normally stored in the locked storage building. Officer Will Jones testified that the door of the storage building looked like it had been pried open. Officers found a hammer on top of the grill located in the back of McMillan’s truck.
 

 ¶ 4. McMillan testified in his own defense. He claimed that he found the grill and two fans outside the shed, so he put them in his truck. This was when the officers arrived on the scene, questioned him, and arrested him for burglary. McMillan admitted that he intended to sell the items in order to gain money to buy drugs. At trial, McMillan attempted to show that he never broke into the shed but only loaded the items, which were sitting outside the shed, into the bed of his truck.
 

 ¶ 5. McMillan now appeals, asserting the following: (1) the trial court erred in sen-
 
 *446
 
 tending him as a habitual offender, and (2) the trial coui't erred in denying his motion for a directed verdict, request for a peremptory instruction, and motion for a new trial. Finding no error, we affirm.
 

 DISCUSSION
 

 I. DID THE TRIAL COURT ERR IN SENTENCING MCMILLAN AS A HABITUAL OFFENDER?
 

 ¶ 6. McMillan contends that he was not properly indicted as a habitual offender; thus, his subsequent enhanced sentence was inappropriate. Uniform Rule of Circuit and County Court 11.03(1) reads:
 

 In cases involving enhanced punishment for subsequent offenses under state statutes:
 

 The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment. The indictment shall not be read to the jury.
 

 ¶ 7. McMillan challenges whether the indictment effectively notified him of the habitual-offender enhancement. Page one of the indictment states that the charge against McMillan was “Burglary of Storage Building, Habitual Offender.” Page two of the indictment included detailed information regarding his previous felonies of forgery and burglary of a dwelling and alleged that he was a habitual offender pursuant to Mississippi Code Annotated section 99-19-81. Plus, the language “against the peace and dignity of the State of Mississippi” appears on the end of the second page which is after the detailed information charging McMillan as a habitual offender. Because the indictment charges McMillan as a habitual offender before the words “against the peace and dignity of the State of Mississippi,” it is not faulty.
 
 See McNeal v. State,
 
 658 So.2d 1345, 1350 (Miss.1995). The indictment included the principal charge and previous charges in the body of the indictment. Therefore, his enhanced sentence under the habitual-offender statute was proper. This issue is without merit.
 

 II. DID THE TRIAL COURT ERR IN DENYING MCMILLAN’S MOTIONS FOR A DIRECTED VERDICT, A PEREMPTORY INSTRUCTION, AND A NEW TRIAL?
 

 A. Denial of Motion for Directed Verdict
 

 ¶ 8. A motion for a directed verdict challenges the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ”
 
 Id.
 
 (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of a motion for a directed verdict.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 

 ¶ 9. McMillan contends that the State failed to prove essential elements of the crime for which he was convicted. The State had the burden of proving beyond a reasonable doubt that McMillan was guilty of the following:
 

 Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, ware
 
 *447
 
 house, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
 

 Miss.Code Ann. § 97-17-33(1) (Rev.2006). The State presented evidence that the fans and grill were the property of the Center. McMillan admitted on the stand that he knew the items did not belong to him and that he was taking the items to sell them for drug money. This is contradictory to the first story he told police when he stated that he owned the property loaded in his truck bed. At trial, he claimed that the items wei’e simply sitting on the ground outside the storage building. However, the State presented additional evidence to contradict this theory. Officer Jones stated that the door handle appeared to have been pried open. Boyd testified that he also saw pry marks on the metal door of the storage building that were not there prior to the evening of the burglary, and the storage building door was always locked when not in use. During cross-examination, Boyd admitted that there were times that the grill remained outside the shed, and he had not personally locked the shed before he went home.
 

 ¶ 10. A jury instruction was given for petit larceny, which was consistent with McMillan’s testimony that he never actually broke into the shed. However, the jury found McMillan guilty of burglary. “The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999).
 

 ¶ 11. After viewing all the evidence in the light most favorable to the State, we find that the evidence is sufficient to support the finding that McMillan pried the door open on the storage building. The State satisfied its burden of proving this element of burglary beyond a reasonable doubt. This' issue is without merit.
 

 B. Denial of Request for Peremptory Jury Instruction
 

 ¶ 12. The standard of review of the denial of a request for a peremptory jury instruction is the same as that for the denial of a motion for a directed verdict.
 
 Baker v. State,
 
 802 So.2d 77, 81(¶ 13) (Miss.2001). Considering the evidence presented by the State as discussed above, there was sufficient evidence to support the trial court’s denial of McMillan’s request for a peremptory instruction. Therefore, this issue is without merit.
 

 C. Denial of Motion for a Neiv Trial
 

 ¶ 13. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844(¶ 18). This Court will weigh the evidence in the light most favorable to the verdict.
 
 Id.
 
 A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, “unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.”
 
 Id.
 
 (quoting
 
 McQueen v. State,
 
 423 So.2d 800, 803 (Miss.1982)). Rather, it means that this
 
 *448
 
 Court, sitting as the “thirteenth juror,” simply disagrees with the jury’s resolution of the conflicting testimony.
 
 Id.
 

 ¶ 14. In the current case, considering all evidence presented at trial in the light most favorable to the verdict, this Court, sitting as a limited thirteenth juror, cannot say that to allow the verdict to stand would sanction an unconscionable injustice. Therefore, this issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A STORAGE BUILDING AND SENTENCE AS A HABITUAL OFFENDER OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. ISHEE AND MAXWELL, JJ., NOT PARTICIPATING.