# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01353-COA

JASON RUSH                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2024 |
| TRIAL JUDGE: | HON. WILLIAM HUNTER NOWELL |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | SETH THOMAS CURREN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| | BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/19/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.     On July 24, 2024, a Quitman County grand jury indicted Jason Rush on three counts of receiving stolen property in violation of Mississippi Code Annotated section 97-17-70 (Rev. 2020). After trial, the jury convicted Rush of all three counts. He was sentenced to serve one year in custody for Count I; ten years, with five years suspended and five years of post-release supervision upon serving five years in custody for Count II; and one year suspended and one year of post-release supervision for Count III. The sentences were ordered to run concurrently. The circuit court denied Rush's motion for judgment notwithstanding

the verdict (JNOV) or a new trial. Aggrieved, Rush appeals, arguing that the evidence presented by the State was insufficient to support the convictions and that the verdicts were against the weight of the evidence. Finding no error, we affirm Rush's convictions and sentences.

**FACTS**

¶2. On October 23, 2023, Phillip Barnett discovered that several items were missing from his farm in Sunflower County, Mississippi, including two-way radios and a generator. After noticing that two of the radios were missing, Barnett contacted William Smith, the individual from whom he had purchased the radios, to determine whether they could be tracked. Smith assisted Barnett in pinging the radios to determine their location. After the radios were located, when he and Smith determined that the signals traced to Rush's address, Barnett contacted law enforcement.

¶3. Chief Deputy Peter Clinton of the Quitman County Sheriff's Department testified that after verifying the location of the pinged radios, he recognized the address as Rush's residence because he had been there on numerous occasions. Law enforcement subsequently obtained a search warrant and conducted a drone flyover of the property before entering. Barnett accompanied officers during the execution of the search warrant and identified several items belonging to him, including tools, a generator, and the two-way radios. He also identified property belonging to another farmer, Ross Dickard. These items were located throughout Rush's residence and inside a vehicle where Rush's driver's license was also found. Rush was present at the residence when law enforcement executed the search warrant.

¶4.    As the search continued, officers noticed a burned utility truck on Rush's property. Chief Deputy Clinton testified that Rush told him that a person named Danny Campbell brought the truck to his property so he could take parts off it. Chief Deputy Clinton also questioned Danny Campbell near Rush's residence. Chief Deputy Clinton testified that Danny was still under investigation for stealing the truck. The utility truck was later identified as a 2019 Ford F-250 that was reported missing from the Town of Tutwiler on September 19, 2023. According to Chief Deputy Clinton, after he was arrested, Rush claimed he knew that people brought stolen items to his property, and he allowed them to do it because "he had a good heart."

¶5.    After the State rested its case-in-chief, Rush moved for a directed verdict on Count II, arguing that the State failed to meet its burden of proving a prima facie case of possession of stolen property (i.e., the Ford F-250 truck). Rush specifically claimed that there was no evidence to support that he knew or should have known that the Ford F-250 was stolen. He also claimed that there was no evidence to suggest that the vehicle was burned on his property. The trial court ultimately denied the motion, finding that there was sufficient evidence to submit to the jury.

¶6.    Rush proceeded to present his case-in-chief by testifying in his own defense. Rush testified that he had no knowledge of the stolen property and stated that five other people were staying on his property on that day. Although the stolen property was found dispersed throughout his house and inside a vehicle where his driver's license was found, Rush claimed that he was unaware that the property was there. Rush also testified that he did not recall

3

making a statement to Chief Deputy Clinton about allowing people to leave stolen property at his house. He further claimed that he did not know the property was stolen "until the police was there with a search warrant." Finally, Rush maintained that he was not there the day Danny Campbell brought the F-250 to his property and that the truck was already burned when it was delivered.

¶7. Following deliberations, the jury found Rush guilty of three counts of receiving stolen property. Rush moved for JNOV or a new trial, which the trial court denied.

## DISCUSSION

### I. Sufficiency of the Evidence

¶8. This Court reviews challenges to the sufficiency of the evidence under a de novo standard. *Simmons v. State*, 387 So. 3d 1036, 1042-43 (¶23) (Miss. Ct. App. 2024) (quoting *Turner v. State*, 291 So. 3d 376, 383 (¶20) (Miss. Ct. App. 2020)). "We view all of the evidence in the light most favorable to the prosecution, accept all the evidence supporting the verdict as true, and give the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence." *Id*. "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Lewis v. State*, 422 So. 3d 1092, 1097 (¶17) (Miss. Ct. App. 2025). "Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all elements of the offense." *Id*.

¶9. Rush contends that the evidence presented by the State was insufficient to support the conviction. Rush was convicted under section 97-17-70, which provides:

4

> A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.

Miss. Code Ann. § 97-17-70. Our Supreme Court has explained that "[g]uilty knowledge is the gist of the offense of receiving stolen property. Guilty knowledge may be shown by evidence that the defendant received the property under circumstances that would lead a reasonable man to believe it to be stolen." *Walton v. State*, 420 So. 3d 982, 985 (¶12) (Miss. Ct. App. 2025). "Guilty knowledge may be proved by direct evidence or by any surrounding facts or circumstances from which knowledge may be inferred." *Id*. "In both direct and circumstantial cases, the jury is empowered to weigh, and resolve conflicts in, the evidence." *Id*.

¶10.     Testimony revealed that the F-250 was reported missing on September 19, 2023, and found on Rush's property on October 23, 2023. "Unexplained possession of recently stolen property is prima facie, although by no means conclusive, evidence of the guilt of the defendant." *Walton*, 420 So. 3d at 985 (¶13) (quoting *Weaver v. State*, 481 So. 2d 832, 834 (Miss. 1985)). Chief Deputy Clinton testified Rush admitted that he allowed people to bring stolen items onto his property and that Danny Campbell brought the truck to his property for parts. Chief Deputy Clinton additionally testified that Rush also admitted to having already removed a part from the F-250. The jury also received evidence that the F-250 was burned. Rush testified that he lacked knowledge of the stolen property and maintained that the F-250 was burned when Danny Campbell brought it. However, it is well established that the jury

5

is "charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed." *McMillan v. State*, 6 So. 3d 444, 447 (¶10) (Miss. Ct. App. 2009).

¶11. Accordingly, after our review of the record, we find that the State presented sufficient evidence for a rational jury to convict Rush of receiving stolen property pursuant to section 97-17-70.

## II. Weight of the Evidence

¶12. Rush next argues that the verdicts were against the weight of the evidence because there was no evidence to support the finding that he knew the property was stolen. "This Court's standard of review of a trial court's denial of a motion for a new trial is abuse of discretion. A new trial will not be awarded unless the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Goldsmith v. State*, 195 So. 3d 207, 212 (¶17) (Miss. Ct. App. 2016) (citations and internal quotation marks omitted).

¶13. Here, the jury heard testimony from Chief Deputy Clinton that Rush admitted he allowed people to bring stolen property to his home because he "had a good heart." Conversely, the jury also heard testimony from Rush denying making that statement and denying that he had knowledge of the stolen property. After hearing all witness testimony during the trial, the jury apparently did not believe Rush's testimony that he did not have any knowledge of the stolen property dispersed throughout his house because the jury found him guilty. Again, this Court has held that "the jury is the judge of the weight and credibility of

6

testimony and is free to accept or reject all or some of the testimony given by each witness." *Johnson v. State*, 276 So. 3d 1195, 1200 (¶22) (Miss. Ct. App. 2018) (citing *Reeves v. State*, 825 So. 2d 77, 80 (¶8) (Miss. Ct. App. 2002)). "When this Court analyzes a jury's verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact." *Reeves*, 825 So. 2d at 80 (¶8). It is not for this Court to "go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." *Id*. "No formula dictates the manner in which jurors resolve conflicting testimony into finding[s] of fact sufficient to support their verdict." *Id*.

¶14. Viewing the evidence in the light most favorable to the verdicts, we find that the jury's verdicts were not so contrary to the overwhelming weight of the evidence that to allow them to stand would constitute an unconscionable injustice. The trial court did not abuse its discretion in denying the motion for a new trial.

## CONCLUSION

¶15. For the foregoing reasons, we affirm Rush's convictions and sentences.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**